UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COLORADO BOXED BEEF CO., INC.,
BRYAN SATERBO, JOHN SATERBO,
JOHN SULLIVAN, and JOHN RATTIGAN,

  Plaintiffs,

v.                                    Case No. 8:18-cv-01237-T-02JSS

EVANSTON INSURANCE COMPANY,

  Defendant.
_____/

## ORDER

This matter comes to the Court on Defendant Evanston Insurance Company's Motion to Dismiss Plaintiffs' Amended Complaint for Declaratory Relief. Dkt. 19. Plaintiffs filed a response in opposition to the motion, Dkt. 21, and on October 3, 2018 the Court heard oral argument, Dkt. 26. The Court hereby GRANTS Defendant's Motion to Dismiss.

### BACKGROUND

Plaintiffs Bryan Saterbo, John Saterbo, and John Rattigan (the "Buyers") and Plaintiff John Sullivan are officers and directors of Plaintiff Colorado Boxed Beef Co., Inc. ("CBB"). Dkt. 11 ¶ 28. Their Amended Complaint seeks a declaration that

Defendant has a duty to defend the Buyers and Plaintiff Sullivan in a lawsuit filed against them in the Tenth Judicial Circuit in Polk County, Florida. *Id.* ¶ 38.

The plaintiffs in that case (the "Sellers") allege that the Buyers made "misrepresentations and omissions about material facts in connection with the Buyers' purchase of shares in [CBB] from the Sellers," essentially relating to alleged usurpation of corporate opportunities and exorbitant compensation. Dkt. 11-2 ¶¶ 2, 19-45. The Sellers assert seven causes of action: (1) fraud in the inducement; (2) negligent misrepresentation; (3) violation of Fla. Stat. § 517.301; (4) breach of fiduciary duty; (5) unjust enrichment; (6) conspiracy to defraud; and (7) rescission. *Id.* ¶¶ 17-22.

Plaintiff CBB holds a For Profit Management Liability Insurance Policy (the "policy") with Defendant. Dkt. 11-1. In its Directors and Officers and Company Liability Coverage Part, the policy includes coverage, providing that "[t]he Insurer shall pay on behalf of the Insured Persons all Loss . . . which the Insured Persons became legally obligated to pay on account of any Claim . . . for a Wrongful Act taking place before or during the Policy Period." Dkt. 11-1 at 27. The policy defines "Wrongful Act" as "any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty . . . ." *Id.* at 31.

The policy also includes Exclusion K, which excepts from coverage any claims "[b]ased upon, arising out of or in any way involving: (i) the actual, alleged or attempted purchase or sale, or offer or solicitation of an offer to purchase or sell, any debt or equity securities; or (ii) the actual or alleged violation of any . . . law relating to debt or equity securities." *Id.* at 32.

Defendant argues that Exclusion K applies and Defendant thus has no duty to defend the Buyers and Plaintiff Sullivan in the underlying lawsuit. The Court agrees.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

"The interpretation of insurance policies, like the interpretation of all contracts, is generally a question of law." *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 143 F. Supp. 3d 1283, 1292 (S.D. Fla. 2015) (citing *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995)).

The parties agree that Florida substantive law governs this dispute. Under Florida law, "the issue of an insurer's duty to defend a lawsuit against its insured is governed by the terms of the policy and the allegations of the complaint." *Chestnut Assocs., Inc. v. Assurance Co. of Am.*, 17 F. Supp. 3d 1203, 1209 (M.D. Fla. 2014) (citations omitted). "[I]f the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend." *Id.* at 1211 (citing *Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.*, 771 So. 2d 579, 582 (Fla. 4th DCA 2000)). "When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely within the policy exclusion and are subject to no other reasonable interpretation." *Szczeklik v. Markel Intern. Ins. Co., Ltd.*, 942 F. Supp. 2d 1254, 1260 (M.D. Fla. 2013). Furthermore, "[i]nsurance coverage must be construed broadly and its exclusions narrowly." *Evanston Ins. Co. v. Gaddis Corp.*, 145 F. Supp. 3d 1140, 1147 (S.D. Fla. 2015) (citations omitted).

**DISCUSSION**

Exclusion K excepts coverage for claims "[b]ased upon, arising out of or in any way involving . . . the actual, alleged or attempted purchase or sale, or offer or solicitation of an offer to purchase or sell, any debt or equity securities[.]" Dkt. 11-1 at 32. The Florida Supreme Court instructs that the language "arising out of" is

unambiguous and means, among others, "having a connection with." *Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co.*, 913 So. 2d 528, 539 (Fla. 2005); *see also Band v. Twin City Fire Ins. Co.,* No. 8:11–cv–02332, 2012 WL 1142396 (M.D. Fla. April 4, 2012) (applying "arising out of" language broadly in excluding coverage).

Likewise, the phrase "or in any way involving" is broad as a term of regular English usage, and courts have so noted. *E.g.*, *Mergenet Sols., Inc. v. Carolina Cas. Ins. Co.*, 56 So.3d 63, 64 (Fla. 4th DCA 2011); *360 Condo. B Ass'n, Inc. v. United States Liab. Ins. Co.*, 2012 WL 12881910, at *6 (S.D. Fla. Dec. 20, 2012). In an insurance case not involving an exclusion, the Eleventh Circuit recently held such language was "extremely broad." *Health First, Inc. v. Capitol Specialty Ins. Corp.*, 2018 WL 4025461, at *5 (11th Cir. Aug. 22, 2018).

The underlying complaint, meanwhile, concerns "an action for damages, or in the alternative rescission, arising from [Buyers' and Plaintiff Sullivan's] misrepresentations and omissions of material facts in connection with the Buyers' purchase of shares in [CBB] from Sellers on or about April 1, 2015." Dkt. 11-2 ¶ 1. The complaint further alleges that because of the Buyers' fraud, they "acquired Sellers' shares in CBB solely with CBB's own funds and without spending a

penny of the Buyers' own money." *Id.* ¶ 2. This purchase is memorialized in the Stock Purchase Agreement (the "SPA").[1]

Each claim of the underlying complaint directly connects Plaintiffs' alleged conduct to the SPA, and each ad damnum clause seeks rescission of the SPA. Count I for fraud in the inducement alleges Buyers and Plaintiff Sullivan "knowingly misrepresented and made material omissions creating the illusion that the [share] purchase price offered . . . was fair when it was not," thereby "deceiv[ing] Sellers as to CBB's business, assets, expenses, and finances . . . the value of the shares." Dkt. 11-2 ¶ 81-85. Count II for negligence largely mirrors this language. *Id.* ¶ 87-92. Count III for violating Fla. Stat. § 517.301 also alleges "Buyers are liable for making false statements and failing to disclose adverse facts known to them about the true value of CBB in connection with the purchase of securities in CBB from Sellers." *Id.* ¶ 95. Under Court IV, Sellers allege the Buyers "violated and breached their fiduciary duties of loyalty to Sellers by making misleading statements and failing to disclose material facts." *Id.* ¶ 104. Though sparsely pleaded, Count V for unjust enrichment contains no specific allegation of activity not connected to the SPA. *Id.* ¶ 107-110. Count VI, conspiracy to defraud, alleges Plaintiffs "conspired to commit an unlawful act or

---

[1] No party disputes that the SPA is a contract for the purchase and sale of equity securities. Dkts. 19, 21.

to do a lawful act by unlawful means in order to defraud Sellers and convince Sellers to sell their shares in CBB at an unfairly low price." *Id.* ¶ 112. The overt act alleged is, again, making misrepresentations and omissions in connection with the SPA. *Id.* ¶ 113. Lastly, Count VII for rescission (of the SPA) by its very nature concerns the SPA and duplicates the language of Counts I and II. *Id.* ¶ 116.

Pointing to *Lime Tree Village Cmty. Club Assn., Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402 (11th Cir. 1993), Plaintiffs argue that some of the alleged activity both preceded and continued after the execution of the SPA and that Plaintiff Sullivan is not a party to the agreement. While this is true, that alleged activity, as well as Plaintiff Sullivan's involvement, is only relevant to the underlying action insofar as it relates to the SPA. In other words, the heart of the issue before the state court is the alleged misrepresentations and omissions of material fact by Buyers and Plaintiff Sullivan relating to securities sales, not the underlying conduct.

This contrasts with the underlying lawsuit at issue in *Lime Tree*. The insurance policy there excluded malicious and intentional acts and acts in violation of civil rights law. *Lime Tree*, 980 F.2d at 1406. In finding a duty to defend, the court noted that "the claims of slander or disparagement of title . . . as well as the two restraint of trade claims . . . do not fall within the exclusion . . .

7

because the underlying plaintiffs need not prove intent to prevail against [the insured] on any of these claims." *Id.*

Here, as mentioned above, the alleged misrepresentations and omissions during negotiations of the SPA are not only connected but central to each of the claims. It is also worth noting that the language of the exclusion in *Lime Tree* was simply "does not apply to any [enumerated acts]," *id.* at 1404, which is narrower than the broad "arising out of" and "in any way involving" language here. *See also Gleason v. Markel Am. Ins. Co.*, No. 4:17-CV-00163, 2018 WL 538324 at *5 (E.D. Tex. Jan. 24, 2018), *reconsideration denied*, No. 4:17-CV-00163, 2018 WL 3819928 (E.D. Tex. Aug. 10, 2018) (excepting coverage under similar securities exclusion because "[e]ven if . . . some of the allegations are not caused by the sale of [the interest] . . . all of the allegations bear, at the very least, an incidental relationship to the sale of [the] interest").

As a result, the allegations in the underlying complaint trigger Exclusion K and Defendant has no duty to defend Buyers and Plaintiff Sullivan.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss (Dkt. 19) is **GRANTED**;

2. Plaintiffs' Amended Complaint is **DISMISSED with leave to amend**. Plaintiffs may file a Second Amended Complaint within twenty (20) days of the entry of this Order. In the absence of timely amendment, dismissal will be with prejudice without any further action of the Court.

**DONE AND ORDERED** at Tampa, Florida, on October 26, 2018.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record