# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

COLORADO BOXED BEEF CO., INC.,
BRYAN SATERBO, JOHN SATERBO,
JOHN SULLIVAN, and JOHN RATTIGAN,

    Plaintiffs,

v.                                                 CASE NO. 8:18-cv-1237-T-02JSS

EVANSTON INSURANCE COMPANY,

    Defendant.
_____/

## **O R D E R**

Plaintiffs seek a declaration that Defendant has a duty to indemnify and defend them in a lawsuit. This matter first came before the Court on Defendant Evanston Insurance Company's Motion to Dismiss Plaintiff's Amended Complaint for Declaratory Relief. Dkt. 19. Plaintiffs filed a response in opposition to the motion (Dkt. 21), and on October 3, 2018, the Court heard oral argument (Dkt. 26). The Court granted the Defendant's Motion to Dismiss, ruling that Exclusion K to the policy defeated Plaintiff's claim. Dkt. 28. The Court granted Plaintiffs leave to file a second amended complaint. Plaintiffs filed a second amended complaint (Dkt. 29), which Defendant has moved to dismiss. Dkt. 32. The Court grants the motion to dismiss with prejudice.

The issues and facts discussed here are almost identical to those addressed in the first dismissal order. Dkt. 28. Plaintiffs Bryan Saterbo, John Saterbo, and John Rattigan (the "Buyers") and Plaintiff John Sullivan are officers and directors of Plaintiff Colorado Boxed Beef Co. Inc. ("CBB"). Dkt. 29 ¶ 28. Their amended complaint seeks a declaration that Defendant has a duty to defend the Buyers and Plaintiff Sullivan in a lawsuit filed against them in the Tenth Judicial Circuit in Polk County, Florida. *Id*. ¶ 43.

The plaintiffs in that underlying case (the "Sellers") allege that the Buyers made "misrepresentations and omissions of material facts in connection with the Buyer's purchase of shares in [CBB] from [the] Sellers." Dkt. 29-2 ¶1. The misrepresentations relate to factors that drove down the stock price, including alleged usurpation of corporate opportunities by the Buyers and Buyers' exorbitant compensation. Dkt. 29-2 ¶¶ 2, 19-49. The Sellers assert seven causes of action in the underlying case: (1) fraud in the inducement; (2) negligent misrepresentation; (3) violation of Florida Statute, section 517.301; (4) breach of fiduciary duty; (5) unjust enrichment; (6) conspiracy to defraud; and (7) rescission. *Id*. ¶¶ 80-122.

Plaintiff CBB holds a For Profit Management Liability Insurance Policy (the "policy") with Defendant. Dkt. 29-1. In its Director and Officers and Company

Liability Coverage Part, the policy includes coverage, providing that "[t]he Insurer shall pay on behalf of the Insured Persons all Loss . . . which the Insured Persons became legally obligated to pay on account of any Claim . . . for a Wrongful Act taking place before or during the Policy Period." *Id*. at 27. The policy defines "Wrongful Act" as "[a]ny actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty . . . ." *Id.* at 31.

Defendant argues that Exclusion K applies and Defendant thus has no duty to defend or indemnify the Buyers and Plaintiff Sullivan in the underlying lawsuit. The Court agrees, and concludes that the underlying lawsuit and Exclusion K render futile any further attempts by Plaintiffs to achieve coverage.

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

"The interpretation of insurance policies, like the interpretation of all contracts, is generally a question of law." *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 143 F. Supp. 3d 1283, 1292 (S.D. Fla. 2015) (citing *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995)).

The parties agree that Florida substantive law governs this dispute. "Under Florida law, the issue of an insurer's duty to defend a lawsuit against its insured is governed by the terms of the policy and the allegations of the complaint." *Chestnut Assocs., Inc. v. Assurance Co. of Am.*, 17 F. Supp. 3d 1203, 1209 (M.D. Fla. 2014) (citations omitted). "[I]f the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend." *Id.* at 1211 (citing *Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.*, 771 So. 2d 579, 582 (Fla. 4th DCA 2000)). "When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely within the policy exclusion and are subject to no other reasonable interpretation." *Szczeklik v. Markel Intern. Ins. Co., Ltd.*, 942 F. Supp. 2d 1254, 1260 (M.D. Fla. 2013). Furthermore, "[i]nsurance coverage must be construed broadly and its exclusions narrowly." *Evanston Ins. Co. v. Gaddis Corp.*, 145 F. Supp. 3d 1140, 1147 (S.D. Fla. 2015) (citations omitted).

**DISCUSSION**

Exclusion K excepts coverage for claims "[b]ased upon, arising out of or in any way involving . . . the actual, alleged or attempted purchase or sale, or offer or solicitation of an offer to purchase or sell, any debt or equity securities[.]" Dkt. 29-1 at 32. The Florida Supreme Court instructs that the language "arising out of" is unambiguous and means, among others, "having a connection with." *Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co.*, 913 So. 2d 528, 539 (Fla. 2005); *see also Band v. Twin City Fire Ins. Co.*, No. 8:11-cv-2332-17TBM, 2012 WL 1142396, at *4 (M.D. Fla. Apr. 4, 2012) (applying "arising out of" language broadly in excluding coverage).

Likewise, the phrase "or in any way involving" is broad as a term of regular English usage, and courts have so noted. *E.g.*, *Mergenet Sols., Inc. v. Carolina Cas. Ins. Co.*, 56 So. 3d 63, 64 (Fla. 4th DCA 2011); *360 Condo. B Ass'n, Inc. v. U.S. Liab. Ins. Co.*, 12-21961-CIV, 2012 WL 12881910, at *6 (S.D. Fla. Dec. 20, 2012). In an insurance case not involving an exclusion, the Eleventh Circuit recently held such language was "extremely broad." *Health First, Inc. v. Capitol Specialty Ins. Corp.*, No. 17-11181, 2018 WL 4025461, at *5 (11th Cir. Aug. 22, 2018). If the claims Plaintiffs seek coverage for "in any way" involve security

sales, the exception applies. And the underlying complaint does indeed involve and arise from security sales.

The Court is bound by the plain language of the underlying complaint. Dkt. 29-2. The entire complaint seeks to revoke, rescind, or get damages for the sale of stock in Colorado Boxed Beef.

The complaint describes itself and identifies itself in its paragraphs 1 and 2, which it labels "Nature of Action." Dkt. 29-2. As to its "nature," the complaint states 1) it is "an action for damages, or in the alternative rescission, arising from [Buyers and Plaintiff Sullivan's] misrepresentations and omissions of material facts in connection with the Buyers' purchase of shares in [CBB] from Sellers on or about April 1, 2015." *Id*. ¶ 1. Further describing the nature of the action, the complaint alleges that because of the Buyers' fraud, they "acquired Sellers' shares in CBB solely with CBB's own funds and without spending a penny of the Buyer's own money." *Id*. ¶ 2.

This purchase is memorialized in the Stock Purchase Agreement (the "SPA").[1] The entire complaint seeks to rescind and achieve damages for breach

---

[1] No party disputes that the SPA is a contract for the purchase and sale of equity securities. Dkts. 32, 33.

and false inducements of the SPA. The SPA is Exhibit A to the complaint. Dkt. 29-2 at 28-56.

Each claim of the underlying complaint directly connects Plaintiffs' alleged conduct to the SPA. The *ad damnum* clause in each of the seven counts seeks rescission of the SPA.

Count 1 for fraud in the inducement alleges Buyers and Plaintiff Sullivan "knowingly misrepresented and made material omissions creating the illusion that the [share] purchase price offered . . . was fair when it was not," thereby "deceiv[ing] Sellers as to CBB's business, assets, expenses, and finances . . . [and] the value of their shares." Dkt. 29-2 ¶¶ 81-85.

Count II for negligence largely mirrors this language. Dkt. 29-2 ¶¶ 87-92. Count III for violation of Florida Statute, section 517.301 also alleges "Buyers are liable for making false statements and failing to disclose adverse facts known to them about the true value of CBB in connection with the purchase of securities in CBB from Sellers." *Id*. ¶ 95. Under Count IV, Sellers allege the Buyers "violated and breached their fiduciary duties of loyalty to Sellers by making misleading statements and failing to disclose material facts." *Id*. ¶ 104. Though sparsely pleaded, Count V for unjust enrichment contains no specific allegation of activity

not connected to the SPA. *Id*. ¶¶ 107-110. Count VI, conspiracy to defraud, alleges Plaintiffs "conspired to commit an unlawful act or to do a lawful act by unlawful means in order to defraud Sellers and convince Sellers to sell their shares in CBB at an unfairly low price." *Id*. ¶ 112. The overt act alleged is, again, making misrepresentations and omissions in connection with the SPA. *Id*. ¶ 113. Lastly, Count VII for rescission (of the SPA) by its very nature concerns the SPA and duplicates the language of Counts I and II. *Id*. ¶ 116.

Pointing to *Lime Tree Village Cmty. Club Assn., Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402 (11th Cir. 1993), Plaintiffs argue that some of the alleged activity both preceded and continued after the execution of the SPA and that Plaintiff Sullivan is not a party to the agreement. While this is true, that alleged activity, as well as Plaintiff Sullivan's involvement, is only relevant to the underlying action insofar as it relates to the SPA. In other words, the heart of the issue before the state court is the alleged misrepresentations and omissions of material fact by Buyers and Plaintiff Sullivan relating to the securities sales, not the underlying conduct.

This contrasts with the underlying lawsuit at issue in *Lime Tree*. The insurance policy there excluded malicious and intentional acts and acts in violation

of civil rights law. *Lime Tree*, 980 F.2d at 1406. In finding a duty to defend, the court noted that "the claims of slander or disparagement of title . . . as well as the two restraint of trade claims . . . do not fall within the exclusion . . . because the underlying plaintiffs need not prove intent to prevail against [the insured] on any of these claims." *Id*.

Here, as mentioned above, the alleged misrepresentations and omissions during negotiations of the SPA are not only connected but central to each of the claims. It is also worth noting that the language of the exclusion in Lime Tree was simply "does not apply [to enumerated acts]," *id.* at 1404, which is narrower than the broad "arising out of" and "in any way involving" language here. *See also Gleason v. Markel Am. Ins. Co.*, No. 4:17-cv-163, 2018 WL 538324, at *5 (E.D. Tex. Jan. 24, 2018) (excepting coverage under similar securities exclusion because "[e]ven if . . .some of the allegations are not caused by the sale of [the interest] . . . all of the allegations bear, at the very least, an incidental relationship to the sale of [the] interest").

Plaintiffs' third attempt at correcting this action (Dkt. 29), suffers from the same defect as the prior dismissed second attempt (Dkt. 11). This is a valiant effort

to recast the underlying complaint's nature away from rescission/security sales damages. But that complaint states its very nature.

In the most recent version Plaintiff adds paragraphs, which highlight the self-dealing, usurpation of corporate opportunity claims of the underlying complaint. Dkt. 29 ¶¶ 30-34. Plaintiff argues, correctly, that these allegations of self-dealing or corporate theft could stand alone as "claims" for "wrongful acts" under the policy.

However, when read with the underlying complaint, these acts do not stand alone. They are part and parcel of the fraudulent inducement and purchase of the (suing) Sellers' shares in the company. These purported claims more than "in any way involve" equity security sales, and these claims certainly "arise out of" the Sellers' quest for SPA rescission and breach damages. Plaintiffs note that these acts to some extent pre- and post-date the SPA. Notwithstanding that, these acts are alleged to be ways the Buyers (Plaintiffs here) cheated the Sellers (Plaintiffs underlying) into taking low value – one of several fiduciary breaches which enabled the rescindable, self-dealing and injurious SPA. These are the very acts by which the securities fraud is alleged to have been accomplished. That the self-dealing might be sued upon by underlying plaintiffs in a separate action does not change

what they are: part of the scheme to undervalue the company and cheat the sale price (*i.e.* "relating in any way to . . . and arising out of" stock sales). *See* Exclusion K.

As a result, the allegations of the underlying complaint trigger Exclusion K and Defendant has no duty to defend or indemnify Buyers and Plaintiff Sullivan. It is therefore **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss (Dkt. 32) is **GRANTED**.

2. Plaintiffs' Second Amended Complaint (Dkt. 29) is **DISMISSED** with prejudice. A fourth version of this complaint will be futile.

3. The Clerk is directed to enter judgment for Defendant and to close the case.

**DONE AND ORDERED** at Tampa, Florida, on December 27, 2018.

       s/*William F. Jung*
       **WILLIAM F. JUNG**
       **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record